MARTHA SPECKELS *v.* JOSEPH SAX.

Where a written agreement was shown and read to the party, and she, knowing the contents, took a pencil to sign it, but found that her name had been subscribed by her brother, who had himself signed as surety, and she thereupon delivered the agreement, stating that she supposed he had written her name, and it was all right; *held,* in the absence of fraud or imposition, that there was a sufficient execution.

It is *conclusively* presumed, where there is a written agreement, that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing; and therefore parol evidence of prior parol promises cannot be received, although one of the parties may have been grossly deceived by verbal promises, on the part of the other, which have not been performed.

Although the terms of a lease bind the landlord to repair, his neglect to do so will not authorize the tenant's abandonment of the demised premises, unless, by the terms of the agreement, the repairs were made a condition precedent to the obligation to occupy.

The landlord's failure to repair, where he is bound to do so by his agreement with the tenant, will not amount to an eviction, but only to a breach of covenant.

Where a landlord leases a house without covenants to repair, the tenant, finding it untenantable, cannot set up an eviction by the landlord, for suffering it to remain in that condition.

A subsequent parol agreement to repair, where there is no new consideration therefor, is not binding: and the continuance of the tenant in the occupation, in such case, is not a sufficient consideration.

THIS action was commenced in the marine court, by a tenant, who claimed damages against his landlord, for failing to make certain improvements upon the demised premises. The premises were held under a written agreement, containing no covenant by the landlord for any repairs or improvements.

The manner of its execution, and the circumstances attending it, are stated in the opinion.

Both before and subsequently to the signing of the agreement, and at the time, the landlord made many and strong assurances that the premises would be in many respects repaired and improved; that a connection would be made with a sewer, which he affirmed was about to be constructed; that conveniences for bathing would be added, &c.

The house was, and continued, in a comfortless and unhealthful condition. Some rooms therein were overflowed with water, and were uninhabitable.

The plaintiff claimed, 1st, that there was no written agreement, properly executed; and, 2dly, that if there was, the subsequent agreements of the defendant to repair were binding; that his failure to make the house tenantable could be treated by the plaintiff as an eviction, and justified her in abandoning the same; and that her relinquishing that right, upon the defendant's renewed promises, formed a sufficient consideration for them.

The court below gave judgment for the plaintiff, and the defendant appealed.

*J. Van Vleck*, for appellant.

*John Paulding*, for respondent.

By THE COURT. WOODRUFF, J.—I regret that this judgment cannot be sustained. It appears to me to exhibit a case of hardship in the application of the rule, that a written agreement is to be taken to merge all previous parol stipulations in regard to the subjects embraced therein, or in other words, that "it is *conclusively* presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing," and therefore parol evidence of prior parol promises cannot be received. There is much reason to believe that the plaintiff was, in this case, grossly deceived by assurances on the part of the defendant that have not been performed.

Nevertheless, the rule is well settled; and though it may operate harshly in this instance, the propriety and wisdom of the rule, in general, cannot be questioned. The written agreement, therefore, should have controlled the court below, and in *that* there was no agreement to repair, &c.

There was no consideration for any *subsequent* promise to repair, and if no consideration, then no binding promise. The suggestion of the justice, in his reasons for the judgment, is, that the neglect of the defendant to put the house into a tenantable condition, amounted to an eviction. But, 1st. The house *remained* in the same condition in which it was when the written agreement was executed. No *act* of the defendant made it untenantable. The defendant violated no agreement in *suffering* it to remain in that condition. And, 2d. If the defendant had been *bound* to repair, his *neglect* to do so would not have amounted to an *eviction*, but only to a breach of covenant.

To, say, then, that the tenant was at liberty to abandon the premises for want of repairs, and her consenting to remain was a good consideration for the defendant's promise to repair, is erroneous, because it *assumes* that the defendant was *already* bound to repair, when he was not bound to do so. And also, because if he *was* bound, his neglect would not authorize such an abandonment, unless, by the terms of the agreement, the repairs were made a *condition precedent* to the obligation to occupy.

The writing was sufficiently executed by the plaintiff to make it her act. It was taken to her by the witness, Peter J. Sax, for the purpose of being signed. He showed it to her, and read it to her. She said it was all right. She then took a pencil for the purpose of writing her name, but perceived that her name was already written, and she then said she supposed her *brother* (who it appears was her surety for the payment of rent) had written her name, and that it was all right; that she knew her brother's writing, and it must be his writing. It also appeared that her brother did sign as surety the previous day, and there was no evidence that he did *not* sign the plaintiff's name to the agreement, as she supposed and admitted he had

done.   This, then, was an adoption by the plaintiff of the signature voluntarily, with full knowledge of the contents of the paper, and that her brother had seen and endorsed it.   There was no fraud or imposition, and a delivery was made of the agreement thus signed as her act.   It must have the same effect as if she had executed her first intention, by writing her name herself.

I think the judgment cannot be sustained consistently with any legal principle, but must be reversed, with costs.

Judgment reversed.